803 F.2d 720
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JAMES LEMASTER, Plaintiff-Appellant
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-3156.
 United States Court of Appeals, Sixth Circuit.
 Sept. 16, 1986.
 
 Before: KRUPANSKY, NELSON and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 This is an appeal from a district court judgment affirming a final decision of the Secretary of Health and Human Services denying claimant LeMaster's application for disability insurance benefits under the Social Security Act. Claimant alleges that since August of 1980 he has been permanently and totally disabled because of an inability voluntarily to control alcohol intake. He also contends that if he is not found to be disabled on account of alcoholism alone, we should find him disabled based on the combination of the alcoholism with three other impairments: (1) a passive-aggressive personality disorder; (2) loss of sight in one eye; and (3) chronic arthritis. We have concluded that the findings of the Secretary are supported by substantial evidence, and we shall affirm the judgment of the district court.
 
 
 2
 The evidence is clear that claimant is an alcoholic, drinking about two "fifths" (750 ml. each) of liquor each week. In 1979 he was treated for a liver disorder. In June of 1981 claimant admitted himself to the hospital after his wife found him passed out and "foaming at the mouth." He was diagnosed as having acute and chronic alcoholism and alcoholic liver disease. After four days in the "detoxification" phase of the hospital's treatment, he was told that he was ready to begin the "rehabilitation" phase of the program. Claimant checked himself out of the hospital, against the advice of his doctors and his wife's intervention notwithstanding. In December of 1981 and March of 1982 claimant was treated for alcoholic gastritis, the doctor observing on the latter occasion that claimant had alcohol on his breath.
 
 
 3
 A psychologist who examined claimant in October of 1982 in connection with the social security claim, Dr. Eugene S. Cherry, also smelled alcohol on claimant's breath. Dr. Cherry found that claimant has an IQ of 86, and that even though he finished the eighth grade, he does not function "much beyond the sixth grade level." Dr. Cherry diagnosed claimant as having a "passive-aggressive" personality disorder. Moreover, Dr. Cherry found claimant
 
 
 4
 "impaired in his ability to relate to others, including fellow workers, and supervisors. He is also severely impaired in his ability to understand and follow instructions on a repeated basis.
 
 
 5
 In the opinion of the examiner, Mr. LeMaster is impaired in his ability to maintain his attention to perform simple repetitive tasks.
 
 
 6
 In the opinion of the examiner, Mr. LeMaster is unable to withstand the stress and pressures associated with day-to-day work activity. He is able of managing his own funds."
 
 
 7
 Dr. Cherry recommended that claimant participate in an in-patient alcohol program lasting at least six weeks.
 
 
 8
 The alleged eye problem seems spurious. The examination of one Dr. Belisle shows that claimant's right eye is a bit weak at 10/200, but another examination puts the right eye at 20/30. But even Dr. Belisle rates the corrected vision in both eyes when used together at 20/30.
 
 
 9
 Claimant has been treated for arthritis on several occasions. In July 1979 it was recorded that "[t]he patient has also had problems with chronic arthritic pains for which he takes Butazolidin and has for a long period of time." The same report indicates that claimant "admits to drinking frequently" and that he had an enlarged liver. He was working at this time and he continued to do so until August of 1980; it thus appears that claimant was an arthritic alcoholic for some time without its impairing his ability to work. In 1981 he was put on 400 mg. of Motrin for arthritic pain in his left shoulder. He was still taking Motrin for left shoulder and left hip arthritic pain in 1982. Even in 1982, however, the "[r]ange of motion of the lumbosacral spine, left hip and left shoulder was all within normal limits."
 
 
 10
 Claimant also complains of dizziness and blackouts. Dr. Cherry seems to believe that this is related to claimant's alcohol abuse. Claimant filed for disability benefits on November 18, 1981. His application was denied by the agency staff and by the ALJ, and the Appeals Council, a U.S. Magistrate, and District Judge Rice all declined to grant relief. Like the district court, this court reviews the Secretary's denial of Social Security Disability benefits only to determine whether the Secretary's findings are supported by substantial evidence. 42 U.S.C. Secs. 1383(c)(3), 405(g); Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). "Substantial evidence means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citing Richardson v. Perales, 402 U.S. 389, 401 (1971). The evidence "must do more than create a suspicion of the existence of the fact to be established. * * * [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." National Labor Relations Board v. Columbian Enameling & Stamping Co. 306 U.S. 292, 300 (1939). Further, "[s]ubstantiality of the evidence must be based upon the record taken as a whole." Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). The court "may not focus and base [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).
 
 
 11
 This court considered a disability claim based on alcoholism in Gerst v. Secretary of Health and Human Services, 709 F.2d 1075 (6th Cir. 1983). The court in Gerst noted that addiction to alcohol or drugs will not by itself be a basis for finding a claimant disabled. Id. at 1078; 20 C.F.R. Sec. 404.1525(e). The court had earlier observed that Gerst
 
 
 12
 "actually engaged in day-to-day activities demonstrating physical and emotional ability to do work and to pursue a variety of other interests which interested him. The ALJ noted specifically that at the hearing in April, 1980, Gerst's 'manner and demeanor was that of a healthy individual, animated in mood, possessing good effect and orientation with a normal to good memory.'
 
 
 13
 There was no evidence or history of insomnia, loss of weight, or suicidal or antisocial tendencies. Appellant failed to establish on the record during the pertinent time such 'recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory' to qualify as disabled under the law and pertinent regulations. 20 C.F.R. Subpart P, Appendix 1, Sec. 12.04. The Secretary found substantial basis in the record, considered as a whole, to support his finding of 'no marked restriction of daily activities and constr[i]ction of interests.' Gerst failed to show, in summary, any mental, emotional or personality disturbance type of disorder related to his alcoholism that would establish a disability under sections 223(d)(1) or 1614(a)(3)(A) of the Social Security Act, or any impairment under 20 C.F.R. Sec. 404.1517 (1980)." 709 F.2d at 1077.
 
 
 14
 Gerst, a former stockbroker, had been able to handle the sale of his home, certain stocks, a boat and other real estate. He also managed to do the shopping for himself and his mother with whom he lived. Id. at 1076, n.1.
 
 
 15
 The claimant in the instant case, according to his own testimony, has likewise been able to engage in a wide range of normal functions. He has been able to drive four or five miles to his son's place of employment almost every day. He goes out to visit friends and family for an hour or two each day. All of these friends are within four or five miles of his home. He does occasional yard work, mowing his lawn with a riding mower "about four times in the past year [1982]." He is able to take care of his personal needs most of the time, although he says he is sometimes unable to lift his arms to put on a shirt or care for his hair. (It will be recalled that he has been found to have a normal range of shoulder motion.) He exercises by walking for periods of about twenty-five or thirty minutes. Like Mr. Gerst, he seems to have "no marked restriction of daily activities and constr[i]ction of interests." Gerst, 709 F.2d at 1077.
 
 
 16
 Since the agency rendered its decision in this case, new listings have been promulgated which cover, in part, the problem of substance addiction. 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 12.09 (1986); see 50 Fed. Reg. 35038 (Aug. 28, 1985). It behooves us to determine whether these new listings require a result other than that which we would reach by following Gerst. See Colyer v. Harris, 519 F. Supp. 692, 696-701 (S.D. Ohio 1981) (new regulations should be applied retroactively only to extent that they would produce the same result or else benefit claimant). The new substance addiction listing requires "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." The new listing provides cross-references to many provisions which are already found in the listings (e.g., personality disorders under Sec. 12.08, liver damage under Sec. 5.05, gastritis under Sec. 5.04, and seizures under Secs. 11.02 or 11.03). The new listing requires not only that the claimant be a substance abuser, but also that he satisfy the requirements of the listing for one of the nine other mental or physical disorders referred to in Sec. 12.09.
 
 
 17
 In promulgating the new listing, the agency rejected the recommendations of the Work Group on Review and Revision of Standards (Listings) for Mental Impairments. The work group would not have required the substance abuse claimant to satisfy listings for other specific physical and psychological disorders, and would have permitted a much broader look at the effects of the substance abuse itself, independent of any other disorders:
 
 
 18
 "12.09 Substance Addiction Disorders (Behavioral changes associated with the regular use of substances that affect the central nervous system.) With A and B:
 
 
 19
 A. Medically documented pattern of pathological use of alcohol or other substances with all of the following:
 
 
 20
 1. Inability to control use of or to stop taking the substance.
 
 
 21
 2. Daily use of substance with frequent intoxication.
 
 
 22
 3. The development of marked withdrawal symptoms after cessation of or reduction in substance use.
 
 
 23
 B. Resulting in persistence of three of the following:
 
 
 24
 1. Marked restriction of activities of daily living.
 
 
 25
 2. Marked difficulties in maintaining social functioning.
 
 
 26
 3. Deficiencies of concentration and persistence resulting in frequent failure to complete tasks (in work settings or elsewhere).
 
 
 27
 4. Repeated episodes of deterioration or decompensation in work or worklike situations which require the individual to withdraw from that situation and/or to experience exacerbation of signs and symptoms."
 
 
 28
 Recommendations of the Work Group on Review and Revision of Standards (Listings) for Mental Impairments at 7-8 (relayed to agency March 12, 1984).
 
 
 29
 In rejecting the above quoted proposal, the agency stated:
 
 
 30
 "While it is recognized that new developments in medical research provide some support for such an approach, it is our opinion that such criteria must be subjected to further study and broad review to determine its [sic] reliability for determining disability for individuals with substance addiction disorders (i.e., whether the proposed listing describes an impairment that would prevent an individual from doing any gainful activity). Therefore, until we have had the opportunity to assess the reliability of the recommendation, we are proposing a referencing listing only which will indicate which other listed impairments must be used to evaluate the behavioral or physical changes resulting from the regular use of addictive substances."
 
 
 31
 50 Fed. Reg. 4948, 4951 (Feb. 4, 1985) (proposed rulemaking, listing of impairments - mental disorders). The Agency reiterated its stance in its notice of final rulemaking, 50 Fed. Reg. 35038, 35041 (Aug. 28, 1985).
 
 
 32
 Claimant has not been able to demonstrate that his condition satisfies any of the listings referred to in Sec. 12.09. He has not supplied the specific data necessary to establish that his liver problem is disabling under Sec. 5.05. He has not demonstrated that his gastritis fits within one of the requirements of Sec. 5.04. Although claimant has made generalized assertions that he has seizures and blackouts, there is no evidence to place him within Sec. 11.02 or Sec. 11.03; in fact, Dr. Franklin in 1982 observed that a workup done during a hospitalization for blackouts "ruled out seizures and brain tumors." While Dr. Cherry diagnosed claimant as having a "passive-aggressive" personality disorder and stated that he is "impaired in his ability to relate to others" and is "severely impaired in his ability to understand and follow instructions on a repeated basis," claimant's own testimony regarding his daily activities belies any notion that he has a psychological impairment of the severity required by the listings.
 
 
 33
 The new listing and the Gerst case lead one to the conclusion that the mere inability to control alcohol intake is not sufficient to allow for a finding of disability. There must be serious interference with the claimant's normal day-to-day activities. An alcoholic who retains the ability to drive, socialize, maintain a lawn, manage his money, etc., is not disabled. The work group recommendations might have lessened the burden of a claimant such as LeMaster, but the agency has specifically refused to implement those recommendations, and we find that refusal significant.
 
 
 34
 The judgment of the district court is AFFIRMED.