929 F.2d 700
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kennedy L. DEATON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 90-3546.
 United States Court of Appeals, Sixth Circuit.
 April 1, 1991.
 
 On Appeal from the United States District Court for the Southern District of Ohio, 89-00308, Sherman (M), J.
 S.D.Ohio
 AFFIRMED.
 Before BOYCE F. MARTIN, Jr., and MILBURN, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Kenneth Deaton appeals the district court's ruling affirming the Secretary's finding of non-disability. Once again, this Court is presented with the issue of whether substantial evidence exists in the record taken as a whole to support the Secretary's finding that the claimant is not disabled. Deaton's claim is based on his alcohol dependency and the mental disorders which have arisen from that dependency. We conclude there is substantial evidence.
 
 
 2
 Deaton, who was 46 years old at the time of the administrative law judge's decision, attended school through the eleventh grade and has obtained a high school graduate equivalency diploma. He has a history of alcohol abuse, beginning in 1972. Deaton asserts this, and the absenteeism which it caused, is the reason he has been repeatedly fired from jobs. From February of 1975 to February of 1977, Deaton worked as a truck tire repairman. He was a machine operator from January, 1979, to January, 1980. In February and March of 1984 and May of 1985, he again worked as a truck tire repairman. Sometime during 1984 or 1985, he worked five weeks at a temporary job for the government picking up trash on the highway. In December, 1985, and January, 1986, Deaton worked as a factory parts cleaner. The record shows he was last employed in December of 1986 as a grinder.
 
 
 3
 Deaton claims that he has been disabled by alcoholism and other mental impairments, including a schizoid-affective disorder and a dysthymic disorder, since December, 1980. On December 16, 1983, Deaton was evaluated at the psychiatric ward of the University of Cincinnati Hospital. He was diagnosed as a probable alcoholic, but the hospital staff found no thought or affective disorders. On June 24, 1986, Deaton was admitted to the Center for Comprehensive Alcoholism Treatment, Inc. He was diagnosed as a chronic alcoholic, but was discharged after only two days of treatment so he could return to work. On discharge, the Center staff noted he had no current medical or emotional problems. On October 13, 1987, Dr. George Lester, Psy.D., evaluated Deaton. Dr. Lester concluded that Deaton is an alcoholic and suffers both mentally and emotionally because of his dependency; however, Dr. Lester also concluded Deaton was adequately able to understand and carry out simple instructions, to perform routine, repetitive tasks and to maintain concentration. He also found him to be fairly able to work with supervisors and co-workers and to deal with the public.
 
 
 4
 From November 10 through November 20 of 1988, Deaton was hospitalized in the Christ Hospital, Cincinnati. Dr. Sanyasi Raju treated Deaton and diagnosed him as being an alcoholic and having an affective disorder. Deaton testified at the administrative hearing that he visited Dr. Raju twice a week for around six months. On September 12, 1988, Dr. Raju completed an evaluation form concerning Deaton's mental functioning. Dr. Raju noted that Deaton's ability to make occupational or social adjustments was poor and that Deaton was disabled.
 
 
 5
 Deaton has admitted to driving a car and visiting his sister and father. Until a year or so ago, he was bowling on Friday nights with his friends. He feeds himself and performs household chores such as washing clothes, sweeping floors and taking out the garbage. Apparently Deaton now spends most of his time sitting at home watching TV.
 
 
 6
 Addiction to alcohol will not alone be a sufficient basis for finding a claimant disabled. Gerst v. Secretary of Health and Human Services, 709 F.2d 175, 1078 (6th Cir.1983). Inability to control the use of alcohol must be combined with a serious interference to day-to-day activities. LeMaster v. Secretary of Health and Human Services, 802 F.2d 839, 842 (6th Cir.1986). "An alcoholic who retains the ability to drive, socialize, maintain a lawn, manage his money, etc., is not disabled." Id. In Gerst, the plaintiff was able to handle the sale of his own home, some stocks, a boat and some real estate. He also shopped for himself and his mother. 709 F.2d at 1076, n. 1. In LeMaster, the plaintiff was able to drive every day, visit friends and family every day, and do occasional yard work. 709 F.2d at 841.
 
 
 7
 In order to succeed on his claim, Deaton must prove the disability existed before the expiration of his insured status on September 30, 1985. Estep v. Weinberger, 525 F.2d 757 (6th Cir.1975). Evidence of a disability after that date is relevant to the extent the evidence sheds light on the existence of a disability before that date.
 
 
 8
 Deaton asserts that the administrative law judge improperly rejected Dr. Raju's findings of alcohol abuse and mental impairments and Dr. Raju's conclusion that Deaton was disabled. In 1983, the University of Cincinnati Hospital diagnosed Deaton as a probable alcoholic but found no other disorders. In 1986, the Center for Comprehensive Alcoholism Treatment diagnosed Deaton as a chronic alcoholic but found him to have no other medical problems. In 1987, Dr. Lester diagnosed Deaton as being an alcoholic and suffering mentally and emotionally because of his dependency. In 1988, Dr. Raju diagnosed both alcohol and mental problems. This evidence shows that Deaton has been slowly developing more serious problems over time because of his addiction to alcohol. He is at the point now where he does very little besides sit at home, watch TV and drink. However, this was not his routine at the time his insurance expired in 1985. In either 1984 or 1985, Deaton spent five weeks temporarily employed picking up garbage along highways. In June of 1985, he worked as a tire repairman. In December, 1985 and January, 1986, after his insurance expired, he cleaned parts in a factory. In December, 1986, he worked as a grinder. Before his insurance expired and for sometime after, Deaton would bowl on Friday nights with his friends. He still often drives to get out of the house or to visit his sister and father, and he still keeps his house clean, sweeping the floors and taking out the garbage.
 
 
 9
 There is substantial evidence in the record to show that, as of September 30, 1985, Deaton's alcohol problem did not seriously interfere with his day-to-day activities, such as driving, regularly visiting family members, socializing on the weekend, working part-time jobs, keeping the house clean, etc. Therefore, the judgment of the district court is affirmed.